## Case No. 8,786.

McFADEN et al. v. The EXCHANGE.

[4 Hall, Law J. 233.]

Circuit Court, D. Pennsylvania. Oct. Term, 1811.[1]

PRACTICE IN ADMIRALTY — SUGGESTION BY DISTRICT ATTORNEY—JURISDICTION—PUBLIC ARMED VESSEL OF FOREIGN SOVEREIGN—EXEMPTION.

[1. The question of jurisdiction, in the case of a public armed vessel in the service of a foreign sovereign, libeled in this country by one claiming title thereto, may be determined upon a suggestion filed by the district attorney, acting under orders from the executive department of the government.]

---

[1] [Reprinted by permission.]

[1] [Reversed in 7 Cranch (11 U. S.) 116.]

[2. A public armed vessel in the service of a foreign sovereign was libeled in this country by one claiming title thereto. *Held*, that neither her service nor character exempted her from the admiralty jurisdiction.]

[Appeal from the district court of the United States for the district of Pennsylvania.]

An armed vessel of war, called the Balaou, No. 5, sailing under flag of Napoleon, emperor of France and king of Italy, commanded by the Sieur Bigon, under a commission from and said to belong to that emperor, and to be in his actual service, arrived in the port of Philadelphia, in the month of ——— last. Shortly after her arrival, she was arrested, by process from the district court of the United States, upon a libel filed by the plaintiffs, McFaden & Greetham, the substance of which is stated in the opinion of the court. No claim was put in by or on behalf of any person, but the attorney of the United States for this district, by orders from the executive department of the government, filed a suggestion, which also appears in the opinion of the court, the effect of which was to stay further proceedings on the merits, and to submit to the court the question whether it had jurisdiction of the cause, so as to proceed at all into an investigation of the case. The question, therefore, before the court, was not upon the merits, and whether the vessel belonged to the libellants or to the emperor, but whether the court had a right to investigate the matter at all, and to say to whom she belonged. The opinion of the district judge was against the jurisdiction [case unreported], from which opinion the libellants appealed to the circuit court.

Hopkinson & Binney, for libellants, in support of the jurisdiction.

Mr. Dallas, Dist. Atty., against it.

WASHINGTON, Circuit Justice. This is an appeal from the district court, in a case of admiralty and maritime jurisdiction. The libel states that the schooner which constitutes the subject of the suit, called the Exchange, was, on the 27th of October, 1809, the property of the libellants, and was duly registered in their names; that in the same month and year she was fitted out by the libellants, and sailed on a voyage to St. Sebastian, in Spain, and was, in December following, forcibly seized under certain acts of the emperor of France, and, without the sanction of any sentence of condemnation, disposed of in violation of the rights of the libellants and of the law of nations; that the libellants have never transferred their right to the said vessel, and that she is now within the territory and jurisdiction of the United States and the jurisdiction of the court.

To this libel an objection was filed by A. J. Dallas, district attorney of the United States for this district, setting forth that this vessel, which in the suggestion is called the Balaou, No. 5, belonging to the emperor of France and king of Italy, and actually employed in his service, under the command of the Sieur Bigon, upon a voyage from Europe to the Indies, having encountered great stress of weather, had been compelled to enter the port of Philadelphia for repairs, and, having conformed to the law of nations and the United States, was about to depart, when she was arrested by the process of the district court. The suggestion then denies that this vessel had been violently captured from the libellants on the high seas as prize, or otherwise, but asserts that she was seized and the property in her was divested out of the libellants (if they ever had any in her) and vested in his imperial and royal majesty, in a port of his empire, according to the laws of France. Upon the suggestion of these facts, it is then submitted whether the court ought to take cognizance of the cause. The replication, after excepting to the suggestion as not being made by any person claiming the said vessel, supports the allegation of the libel and negatives those set forth in the suggestion. An objection is made to the mode of proceeding in this case. It is contended that no person ought to be admitted to contest the right of the libellants, or to interpose in any manner to prevent a decision upon their rights, but one who claims the property either for himself or on behalf of some other, and that the district attorney has not stated in his suggestion that he claims, or even appears for himself, for the United States, for the French emperor, or any other person.

I understand from the opinion and decree of the judge of the district court that the district attorney, when he filed the suggestion, stated that he did so at the request of the executive department of the general government, to whom an application and representation had been made by the French minister, containing a protest and denial of the allegations of the libel; and further that the suggestion in this case is substantially agreeable to the form usually practiced upon, when the executive department thinks it incumbent on it to give information through the law-officer of the district, to that court, of any matters subject to its judicial cognizance, which come to the knowledge of the executive in the course of its communications with foreign powers or their agents. I do not feel disposed to disturb this practice, being of opinion that the department of our government charged with the care of our foreign relations should be admitted in some way or other to give such information upon subjects which concern the peace of the nation, or which the executive deems essential for the public good to communicate in this way. The proceeding would certainly have been more regular if the reason of filing the suggestion had been stated on the face of it, as the court would certainly not listen to the impertinent and officious suggestions of any person who might think proper to interfere. But the responsible character attached to the public law-officers of the United States

courts forbids the supposition that they act without authority when they declare the contrary to the court. In other countries, communications from the government to the courts of admiralty are generally made in the form and with the effect of mandates, which the judge finds himself compelled to obey. Such is not the present condition of any court in the United States, and I trust never will be. If a legal objection to the jurisdiction of the court appears on the face of the record, it will not be denied but that the district attorney, or any other person as an amicus curiae, may properly point it out. But if the objection arises from facts not so appearing, the district attorney, thus intrusted to file a suggestion, must establish the facts by proof, in the same manner as in ordinary cases between private individuals. Accordingly, that officer in the present case proceeded to support the allegations of the suggestion by exhibiting the commission of the officer commanding this vessel, granted by the emperor of France, authenticated by the depositions of the commander himself, and of the French vice consul.

The evidence has been objected to by the appellant's counsel. It is said that the officer found in possession of the vessel ought not to be admitted by his own evidence to justify and maintain that possession, and that the testimony of neither of the witnesses ought to be regarded, because the libellants were denied the privilege of cross-examining them. The objection to the competency of the Sieur Bigon is certainly not a good one, since he claims no interest whatever in the vessel, and no circumstance has appeared to bring his credit into question. There can be no doubt of the right of the libellants to cross-examine these witnesses, and I must presume (even if the presumption were not supported by the declaration of the district judge) that the privilege of cross-examining was not denied by the court; because if it had been, an exception would certainly have been taken to the opinion. But if an error of this sort had been committed by that court, it might have been required at the trial in this court; yet no attempt was made to examine these or any other witnesses.

The facts which I consider as proved by the evidence in the cause are that this vessel, called in the libel the Exchange, is a public armed vessel, claimed by the emperor of France, in the possession of an officer duly commissioned by the emperor, sailing under the flag of that nation, and now lying in the port of Philadelphia, and the question of law is whether the district court of the United States for this district can take cognizance of a libel filed in that court against this vessel, on the part of the original owner, who has never by any act of his parted with his right to her. The case is highly important, and has been argued with great ability on both sides.

The general rule of the law of nations laid down by the counsel for the appellant is that whatever goods and effects lie within the extent of a country, or are found there, whether movable or immovable, are subject to the authority and jurisdiction of the courts of that country. The rule, as a general one, is admitted. It is certainly supported by the most respectable authority, and is contradicted by none. But it is contended on the other side that a public armed vessel, belonging to a foreign prince, which has committed no offence within the jurisdiction of the country where she is found, forms an exception to the rule. This exception is not to be discovered in the writings of any jurists, foreign or domestic, nor does it appear to be founded in the practice of nations, so far as is recollected by the court, or has appeared from the researches of the bar. Bynkershoek (who has been roughly handled by the counsel on one side, and highly eulogized on the other, but whom all must admit to be a respectable writer on the laws of nations), in stating the general rule, and for the purpose of negativing an exception to or on account of any supposed privilege which sovereigns might claim, lays it down in the clearest terms that the goods and effects of a sovereign, whilst they are within a foreign territory, are subject to the laws of that country and to the jurisdiction of its courts. He considers the privilege of the sovereign to be exempted from the jurisdiction of a foreign tribunal, to be merely personal, and not extending to his goods found there. He proceeds to support this doctrine by the practice of the courts of Holland, at that time amongst the most respectable nations of Europe. It is true that in many of the cases which he cites the government arrested the proceedings; but this only proves that such interference was deemed necessary for reasons of state, to prevent the exercise of jurisdiction by the judicial tribunals, which otherwise would have proceeded in its regular and acknowledged channel. It is said that this author, in his efforts to regulate an exception in favor of a foreign prince, is not supported by any other elementary writer, or by a usage founded on the practice of nations. The answer given to this observation is, I think, a fair one. The doctrine is consistent with the general rule and has for near a century been pronounced by this author as forming a part of the law and practice of nations, and is denied by no writer of respectability, nor by any evidence of a contrary usage. But it is not true that this position has not received the sanction of more modern writers on the law of nations. Rutherford is express. He says "that the right of territory extends the authority of such laws to all questions which relate to the use or private ownership of such movable goods as are within the territory of the nation, and of such immovable goods as are confessedly a part of its territory; whether its own members only are concerned in these ques-

tions or the collective bodies, or the individual members of other nations." In other parts of this chapter he explains the terms "collective body of the nation" to mean the nation itself, or the sovereign power. But it is still contended that though exemption of the sovereign from the foreign jurisdiction in relation to his private effects may be denied by these authorities, still the public armed vessels of the same sovereign stand upon different ground, and that their exemption is not controverted by those writers. It is true that except in some of the cases stated by Bynkershoek, where public armed vessels were arrested, this distinction between the public armed vessels and the private property of the sovereign is not noticed. The general expressions of these jurists embrace both public and private vessels, and if the former are entitled to exception, those who contend for the exception are bound to prove it supported either by authority or by strong and unquestionable reason. How then does this question stand on the ground of reason? What is there in the character of a public armed vessel to withdraw her from the jurisdiction of a foreign court? It is admitted, and such indubitably is the law, that if such a vessel should, within the foreign jurisdiction, do any act which would expose a private vessel to forfeiture, she would not be protected on account of her public character. Why should she not be protected? The answer given by the counsel who endeavors to maintain the exception, and yet who is compelled to admit this qualification of it, is because the offence is committed within the foreign jurisdiction. Then it follows that the reason for the exemption is not founded on the character of the vessel, but on the place where the offence was committed. because the same reason equally applies to a private vessel of the sovereign or of an individual; and if a private vessel would be forfeited, because the offence which produces the forfeiture was committed within the jurisdiction, and would not be forfeited if it were committed elsewhere, and a public armed vessel would equally be forfeited or not, for the same reason, I should like to know what becomes of the distinction which is attempted between the one vessel and the other? It is true that offences are in their nature local, unless rendered otherwise by express statute; but if that statute makes no distinction between public armed and private vessels, the locality of the offence would no more protect the one than the other from the jurisdiction of the foreign courts, both being found within the territory of that nation. How is it with respect to contracts? It is admitted that the property of a sovereign, found within a foreign territory, is as much subject to the jurisdiction of the courts of that country, in a matter of contract, as if it had belonged to a private individual. The goods of a sovereign, found within a foreign territory, may be made liable for liens to which the laws of that country subject them; and I presume it will scarcely be denied that for repairs done in this state to a public armed vessel of a foreign prince she may be proceeded against in the admiralty by the ship-carpenters and material men in the same manner as if she were a merchant vessel. The reason of this cannot be because the repairs were made within this state, because contracts are in their nature transitory. If, then, public armed vessels, no less than the private property, movable or immovable, of a foreign prince, being within the territories of a foreign country, are subject to the jurisdiction of its courts, not only to answer for offences, but in matter of contract, it would seem to follow that the distinction which has been attempted between the public armed vessels and the private armed vessels of a foreign prince is entirely fanciful. It was said, that to lay the arm of the law upon a public armed vessel of a foreign prince is an act of hostility. If so, then the admitted cases where such a vessel may be arrested and subjected to a judicial sentence cannot be well founded in law; for it never can be allowed to courts of justice to commit acts of hostility against foreign nations. This power, in all countries, belongs to some other department of the government, and although the acts of a court may sometimes be the remote cause of a war, just or unjust, on the part of a foreign nation, yet a power to commit a direct act of hostility can never be properly lodged with that department. If, then, the exemption of a foreign prince from the jurisdiction of the courts of a country within whose territories his property is found, is not to be maintained on the ground of his personal privileges, the character of his property, or the locality of the transaction which becomes the subject of judicial inquiry, I am at a loss for a solid ground for excluding the present case from the jurisdiction of the district court.

I am fully sensible of the delicate nature of the question which is here decided, and I feel cheered by reflecting that the error of my judgment, if I have committed one, can and will be corrected by a superior tribunal; for surely a question of such national importance as this is, ought not, and I hope will not, rest upon the decision of this court. I can at the same time truly declare that if I could be so wicked as to decide this case different from the opinion which I must sincerely entertain respecting it, my humble genius and talents would not enable me to give one single reason which my conscience or judgment could approve. It is therefore adjudged, ordered and decreed that the decision of the district court be reversed, and that the decree be remitted to the district court for further proceedings.

[NOTE. The decision of the circuit court was reversed in the supreme court upon appeal, Mr. Chief Justice Marshall delivering the opinion of the court. 7 Cranch (11 U. S.) 116.]